# Richmond.

## ·CITY OF HAMPTON v. NEWPORT NEWS AND HAMPTON RAILWAY, GAS AND ELECTRIC COMPANY

### No. 2247.

### January 14, 1926.

1. CORPORATION COMMISSION—*Street Railroads—Abandonment of Service.*— The State Corporation Commission has jurisdiction to entertain a petition by a street railroad company for permission to abandon a portion of its railroad system on the ground that it was operated at a loss. The ordinance granting the company the privilege to operate its cars over the streets of the city, did not constitute such a contract as rendered it inviolable under the Federal Constitution. Following *Portsmouth* v. *Virginia Railway and Power Company* (No. 1243) 141 Va. 44, 126 S. E. 366.

2. CORPORATION COMMISSION—*Street Railroads—Petition to Abandon Service —Evidence to Show that the Service was Operated at a Loss.*—On appeal from an order of the Corporation Commission, granting a street railway company permission to abandon a portion of its lines, it was contended by the city that the proof failed to sustain the allegations of the petition that the company was operating at a loss, and that a continuance of the service would therefore amount to a confiscation of its property. The company presented to the Commission the evidence of its proper officers that the railway was being operated at a loss. The city offered no evidence in contradiction of that offered by the company, and the Commission certified as a fact, that the service was being operated at a loss and had been so operated for a long time.

   *Held:* That there was no merit in the contention that the proof failed to sustain the allegations of the petition.

·3. ·CORPORATION COMMISSION—*Action of Commission Regarded as Prima Facie Just.*—On appeal from an order of the Corporation Commission, the action of the Commission appealed from is to be regarded as *prima facie* just, reasonable and correct.

4. CORPORATION COMMISSION—*Valuation of Property—Petition by Street Railroad to Abandon Service.*—While the Commission had the power to order a valuation of all of the property of the company, in order

to determine whether or not it was operating at a loss, it was not obligatory upon the Commission to do so.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*John H. Bowen,* for the appellant.

*John Weymouth,* for the appellee.

CAMPBELL, J., delivered the opinion of the case.

This is an appeal from an order entered by the State Corporation Commission permitting the defendant in error to discontinue the operation of its street cars in the city of Hampton along Locust street from Queen street to Mallory avenue, and on the line from Mallory avenue in a northerly direction to its terminus.

The agreed statement of facts, certified to this court by the chairman of the Corporation Commission, shows, among other things, that the petitioner, the Newport News and Hampton Railway, Gas and Electric Company, is a public service corporation, a public utility and a transportation company; that it operates a street railway, furnishes light, power, ice and gas for the entire lower Virginia peninsula. It operates its east Hampton line under two franchises—the first franchise granted by the board of supervisors of Elizabeth City county on the 29th day of May, 1901, and the second by an ordinance passed by the town of Hampton, Virginia, April 11, 1907; that the charter of the Newport News and Old Point Railway and Electric Company is a legislative charter, approved March 1, 1898 (Acts 1897-98, c. 596); that the charter of the

Hampton Roads Railway and Electric Company is a legislative charter, approved February 20, 1900 (Acts 1899, 1900, c. 464); that these two charters are the ones in issue in this case.

The charter of the town of Hampton, afterwards the city of Hampton, is contained in the proceedings of the extra session of the Virginia Assembly of 1887, chapter 382.

The company filed a statement with its petition, the figures in which were testified to by Auditor G. H. Caskey, showing that the net loss for the entire railway system of petitioner for the year 1923 was $93,203.65; and the net loss of the east Hampton division for the same period was $13,268.55; that the net loss for the entire railway system for the first five months of 1924 was $54,407.32; and the net loss of the east Hampton division for the same period was $5,096.72.

The appellant filed a special plea, which denied the jurisdiction of the Commission on the ground "that the matters set forth in the petition relate to the operation of a portion of the railway system in the city of Hampton, concerning which the petitioner is under contract obligations with the city   *   *   *   to operate, and is subject to such terms   *   *   *   as are imposed by the corporate authorities of the said city *   *." The Commission, being of the opinion that, under the provisions of the Constitution and statutes of the State, it should assume jurisdiction, rejected the plea of the city and denied its motion to dismiss the petition of the company, and entered the order herein complained of.

[1] The main contention of the appellant is that the ordinance granting to the company the privilege to operate its cars over the streets of the city constituted such a contract as rendered it inviolable under the pro-

visions of Article 1, section 10, of the Federal Constitution.

So recently has this identical question been so ably dealt with by the president of this court that a further discussion thereof would be but an effort upon our part to glean over barren fields.   In order, however, to preserve the continuity of the decisions on the subject, we quote with approval from the opinion in *Portsmouth* v. *Va. Ry. & P. Co.*, No. 1243, 141 Va. 44, 126 S. E. 366, decided January 15, 1925.   In this case Judge Prentis said:

"The maintenance of street railway tracks as facilities which are necessary for the performance of public service by a street railway company is obvious.   That the State, through the exercise of the police power, may require them to be properly maintained in the public interest must also be conceded.   It follows, therefore, that under the sovereign power of regulation, as the company may be required to establish and maintain such facilities, the State, under proper conditions and in order to avoid confiscation, may also decline to require their continuance and permit the abandonment of such facilities if the circumstances justify such action.

"The only question here, then, as it seems to us, which can be properly raised is whether or not the State has exercised or provided the proper agency for the exercise of its reserved power.   As to this we have no doubt whatever, for under section 156-b of the Constitution the State Corporation Commission is given the power and is charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their *public duties* and their charges therefor, and of correcting

abuses therein by such companies and to that end may make proper rules and regulations. The Commission is also charged with the duty of requiring them to establish and maintain all such public service facilities and conveniences as may be reasonable and just, with the power to alter and amend such rules, regulations and requirements from time to time. These powers appear to include the supervision and regulation of every facility the use of which affects the obligations of the transportation company to the public. Then there are the various statutes which have been passed pursuant to the Constitution, which because they have been so often quoted we do not repeat, the manifest purpose of which is to vest the Commission with all of the powers of the State which are necessary to regulate and control such corporations in so far as their duties to serve the public are concerned. We entertain no doubt whatever as to this, but the ultimate result would (in the absence of some valid inhibition) be the same, even if the State had not, by Constitution or statutes, acted or provided the tribunal to act for the State, because had it failed to do so, this failure would neither destroy nor deny the right of such companies to invoke the Federal Constitution through the courts in order to prevent the confiscation and destruction of their property, in performing the public service.

"That the company should be authorized to abandon these tracks, under the facts found by the Commission, is manifest, because their continued maintenance and operation would be the taking of the property without due process of law.

"While we have never before had occasion to consider the authority of the Commission to permit the discontinuance of facilities theretofore devoted by trans-

portation companies to the public service, its jurisdiction to grant such permission is based upon the same reasons which and supported by the same authorities as the power which is as plainly vested in it to prescribe rates and to require facilities to be maintained. It therefore seems unnecessary further to repeat these reasons or to cite any more cases than those to which we have already referred in this opinion."

[2] It is also contended by the city, that, although the Commission had jurisdiction to determine the question of abandonment by the company of its street car lines, the proof fails to sustain the allegations of the petition that the company was operating at a loss,. and a continuance of the service would therefore amount to a confiscation of its property.

There is no merit in this contention. The company presented to the Commission the evidence of its proper officers that the railway was being operated at a loss. The city offered no evidence in contradiction of that offered by the company. The Commission certifies as a fact that "the transportation system, while not accurately segregated from the rest of the property of the company, clearly appears to be, at present, and has been for a long time, operated at a loss * * *."

In *N. & W. R. Co.* v. *Public Service Commission,* 82 W. Va. 408, 96 S. E. 62, 8 A. L. R. 155, the court said: "We will not override the Commission's findings of fact where there is evidence upon which to base them."

[3] In *Southern Railway Co.* v. *Commonwealth,* 124 Va. 53, 97 S. E. 343, speaking through Judge Burks, it was held that this court will follow the mandate of the Constitution as contained in section 156-f, "that the action of the Commission appealed from shall be regarded as *prima facie* just, reasonable and correct."

[4] While the Commission had the power to order a valuation of all of the property of the company, in order to determine whether or not it was operating at a loss, it was not obligatory upon the Commission to do so.   Passing upon the evidence before it, the Commission was evidently convinced that the allegations of the petition were true.   From this finding of fact we have no inclination to depart.

We are, therefore, of the opinion that the order entered by the State Corporation Commission is plainly right and should be affirmed.

*Affirmed.*